**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| BART LEVY, | : | Bankr. No. 23-13746 (AMC) |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| ANDREW R. VARA, | : | |
| UNITED STATES TRUSTEE | : | Adversary No. 24-00110 (AMC) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| BART LEVY, | : | |
| | : | |
| Defendant. | : | |

**OBJECTION OF THE UNITED STATES TRUSTEE**
**TO MOTION TO VACATE ENTRY OF DEFAULT JUDGMENT**

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), by and through his undersigned counsel, files this objection (the "Objection") to *Defendant's Motion Pursuant to 11 U.S.C. § 105, Fed. R. Bankr. P. 7055 and 9024, and Fed. R. Civ. P. 60 to Set Aside Default and Vacate Default Judgment* (Adv. Docket No. 16)[1] (the "Motion to Vacate"). In support of this Objection, the U.S. Trustee states as follows:

**BACKGROUND**

1. On September 3, 2024, U.S. Trustee timely filed the *Complaint of the United States Trustee Objecting to the Granting of Debtor's Discharge* (Adv. Docket

---

[1] Citations to the adversary docket in *United States Trustee v. Levy*, Adv. No. 24-00110 (AMC) will be cited herein as "Adv. Docket No. __." Citations to the main bankruptcy docket in *Levy*, Bankr. No. 23-13746 (AMC) will be cited herein as "Bankr. Docket No. __."

No. 1) (the "Complaint").[2]

2. On September 4, 2024, the Clerk of Court issued the Summons in an Adversary Proceeding (Adv. Docket No. 2) (the "Summons"). As set forth in the Summons, the deadline to respond to the Complaint was October 4, 2024 (the "Answer Deadline").

3. As set forth in the Certificate of Service, on September 4, 2024, Plaintiff served a copy of the Complaint and Summons on defendant Bart Levy ("Defendant"). *See* Adv. Docket No. 3. On September 4, 2024, Plaintiff also served a copy of the Complaint and Summons on Jonathan H. Stanwood, Esq. ("Counsel") as counsel to Defendant. *Id.*

4. The Answer Deadline passed without the Defendant answering or otherwise responding to the Complaint. Defendant did not seek extension of the Answer Deadline.

5. On October 8, 2024, the Clerk entered a default (the "Default") against the Defendant pursuant to Fed. R. Civ. P. 55(a) and Fed. R. Bankr. P. 7055 for his failure to plead, otherwise defend or enter an appearance in this adversary proceeding. *See* Adv. Docket No. 5.

6. On October 8, 2024, after the default was entered, the U.S. Trustee filed the *Motion for Default Judgment by the United States Trustee* (Adv. Docket No. 6) (the "Motion for Default Judgment"), pursuant to which the U.S. Trustee requested the entry of default judgment by the Court.

7. On October 8, 2024, the U.S. Trustee also filed the notice for the Motion

---

[2] Capitalized terms used herein and not otherwise defined are defined as set forth in the Complaint.

2

for Default Judgment (Adv. Docket No. 7) (the "Notice").

8. The Notice stated that any responses to the Motion for Default Judgment were required to be filed on or before October 22, 2024.

9. In accordance with the scheduling procedures of the Court, the Notice noted that a hearing date would be assigned by the Court if necessary. *See* Notice, fn. 1. ("Hearing dates on dispositive motions in adversaries may be assigned by the Honorable Ashely M. Chan if needed.")

10. The Motion for Default Judgment and Notice were served on the Defendant, his Counsel, and the chapter 7 trustee. *See* Adv. Docket No. 6-3.

11. On October 9, 2024, Defendant filed *Defendant's Answer to Complaint* (the "Late Answer").

12. Defendant neither requested nor received Court authorization to file an untimely Late Answer.

13. On October 16, 2024, the Court scheduled a hearing (the "Hearing") on the Motion for Default Judgment for October 30, 2024 at 11:00 a.m. The U.S. Trustee and Defendant received notification of the hearing in the same manner (*i.e.*, via CM/ECF notification to counsel). *See* **Exhibit A** attached hereto.

14. Defendant did not respond to the Motion for Default Judgment.

15. Defendant did not attend the Hearing on the Motion for Default Judgment.

16. On November 1, 2024, the Court entered the *Order of Court for Entry of Default Judgment* (Adv. Docket No. 13) (the "Default Judgment"). On the same day, the U.S. Trustee served the Default Judgment on the Defendant, his Counsel, and

3

the chapter 7 trustee. *See* Adv. Docket No. 14.

17. On November 12, 2024, Defendant filed the Motion to Vacate.

## **OBJECTION**

18. Through the Motion to Vacate, the Defendant seeks to vacate the Default and Default Judgment. The requested relief must be denied.

19. In considering vacatur of an entry of default or a default judgment, the court considers the following factors: (1) whether the plaintiff would be prejudiced by setting aside the default; (2) whether the defendant has a meritorious defense; and (3) whether the default resulted from the defendant's own culpable conduct. *See Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987) (setting forth factors to be considered by a court in deciding whether to vacate judgment under Rule 60(b)); *Feliciano v. Reliant Tooling Co. Ltd.*, 691 F.2d 653, 656 (3d Cir. 1982) (noting that the same factors apply whether the court is asked to set aside an entry of default or open a default judgment); *Worldwide Associates, Inc. v. Golden Mark Maintenance Ltd.*, 2000 U.S. Dist. LEXIS 8701, No. 99-5889, 2000 WL 795894, at *1 n.2 (E.D. Pa. June 9, 2000); *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982).[3]

20. The "'threshold question' is whether the defendant has alleged facts which, if established at trial, would constitute a meritorious defense to the cause of action." *Resolution Trust Corp. v. Forest Grove, Inc.*, 33 F.3d 284, 288 (3d Cir. 1994) (quotation omitted); *see also NuMed Rehabilitation, Inc. v. TNS Nursing Homes of*

---

[3] The Defendant asserts that the Default and Default Judgment should be vacated for "mistake, inadvertence, surprise, or excusable neglect." *See*, Motion to Vacate, ¶ 16. The Defendant asserts that the excusable neglect standard is analyzed through the three factors set forth above. *See*, Motion to Vacate, ¶ 17. The Motion to Vacate does not address (i) the legal standard for mistake, inadvertence, or surprise or (ii) any facts in support of the assertion that relief can be predicated on any of those bases.

*Pennsylvania, Inc.*, 187 F.R.D. 222, 225 (E.D. Pa. 1999) ("Because the existence of a meritorious defense is a threshold consideration, the absence of such is necessarily fatal to the Rule 60(b) motion of the defendant"). Without a meritorious defense, the inquiry stops and vacatur may be denied without consideration of the other factors. *Id.*; *see e.g., Worldwide Assocs. v. Golden Mark Maint., Ltd.*, 2000 U.S. Dist. LEXIS 8701, at *1 (E.D. Pa. June 8, 2000) (Where defendant made only vague allegations that it had meritorious defenses to plaintiff's claims and failed to assert specific facts supporting the existence of such, it was inappropriate to vacate default judgment entered against it); *New Forum Publrs., Inc. v. Nat'l Org. for Children, Inc.*, 2003 U.S. Dist. LEXIS 11702 (E.D. Pa. June 30, 2003) (Because a company and its officers failed to establish a meritorious defense to a corporation's copyright infringement claims, their motion to vacate a default was denied, and the corporation was awarded actual damages and attorney's fees); *Fid. & Guar. Ins. Co. v. Keystone Contractors*, 2002 U.S. Dist. LEXIS 15403 (E.D. Pa. Aug. 14, 2002) (The defendants were without a meritorious defense to the claims upon which the default judgment rested, and the absence of such was fatal to the defendants' motion to vacate the default judgment.).

21. Defendants may not establish a meritorious defense with "simple denials or conclusory statements," rather, the defendant must assert "specific facts" supporting their meritorious defense. *United States v. $ 55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). To establish a meritorious defense, the defendant must allege sufficient facts which, "if established at trial, would constitute a complete defense to the action." *Id. Choice Hotels Int'l, Inc. v. Pennave Assocs.*, 192 F.R.D.

5

171, 175 (E.D. Pa. 2000). Otherwise, a default generally could be vacated and judgment averted virtually at the will of the defendant. *Carpenters Health & Welfare Fund v. Alexander Woodwork Co.*, 1999 U.S. Dist. LEXIS 119, at *6 (E.D. Pa. Jan. 12, 1999).

### **Defendant Has Not Established a Meritorious Defense**

22. Despite the requirement to provide specific facts that would constitute a complete defense, the Motion to Vacate makes one conclusory statement regarding Defendant's purported meritorious defense, which consists of a general reference to the Late Answer. *See*, Motion to Vacate, ¶ 21 (and Exhibit B thereto, which is the Late Answer).

23. Because the Defendant does not carry his burden of indicating the specific facts, it is unclear which portion of the Late Answer purportedly provides the complete defense to the causes of action set forth in the Complaint. In fact, the Late Answer admits to substantially all the material factual assertions set forth in the Complaint.

24. The Defendant has admitted that (i) the Net Sale Proceeds were an asset of the estate as of the Petition Date, (ii) as of the Petition Date, the $102,974.18 in Net Sale Proceeds derived from the sale of the Sold Property was on deposit in the Wells Fargo account ending 7982 (the "Estate Account"), (iii) through unauthorized post-petition transfers, the Net Sale Proceeds were transferred into accounts in which Defendant does not have any interest in, or control of, and (iv) all of the foregoing was not disclosed. *See e.g.*, Complaint, ¶ 26-30. Nevertheless, the Late Answer seems to indicate that certain of the Counts of the Complaint fail because the Net Sale

6

Proceeds were claimed as exempt. However, the Net Sale Proceeds were not in fact claimed as exempt. On January 1, 2024, the Defendant filed his completed *Official Form 106C, Schedule C: The Property You Claim as Exempt* (Bankr. Docket No. 21) ("Schedule C"). Schedule C does not list the Sold Property as exempt nor the Net Sale Proceeds resulting therefrom. Schedule C lists the Estate Account, with a stated exempt dollar amount of only $2,500. Schedule C therefore does not include the Net Sale Proceeds in the exemption for the Estate Account, which Net Sale Proceeds the Defendant has admitted were in the amount of $102,974.18 and on deposit in the Estate Account as of the Petition Date. Thus, the Net Sale Proceeds were not exempted and any purported defense grounded upon that assertion must fail.[4]

25. In addition to the general overarching deficiency just discussed, Count 4

---

[4] *See e.g.,* 4 *Collier Bankruptcy Practice Guide* P 74.04 (2024) ("For property to be exempt, the debtor must claim the property as exempt. This is done either by filing a separate list of property claimed as exempt or, more appropriately, in compliance with Fed. R. Bankr. P. 4003(a), by completing Schedule C of Official Form 106C…The property claimed as exempt must be sufficiently described so that the trustee and parties in interest can reasonably be expected to know what property the debtor claims as exempt. Schedule C requires not only a description of the property claimed as exempt, but also reference to the law providing for the exemption, an estimate of the current value of the debtor's interest in the property claimed as exempt, and the amount of the exemption taken."); *In re Schneider*, 2013 Bankr. LEXIS 4730, at *14-16 (Bankr. E.D.N.Y. Nov. 8, 2013) (internal quotations and citations omitted) ("While exemptions in bankruptcy are to be broadly construed, exemptions are not automatic. They exist only as a result of the affirmative declaration of the debtor. Bankruptcy Code section 522(l) requires that '[t]he debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section.' Bankruptcy Rule 4003(a) adds that '[the] debtor shall list the property claimed as exempt under section 522 of the Code on the schedule of assets required to be filed by [Bankruptcy] Rule 1007.' Thus, to claim property as exempt, a debtor must file Schedule C to list all property claimed as exempt."); *Delaney v. Messer*, 2023 U.S. Dist. LEXIS 50217, at *27-29 (E.D.N.Y. Mar. 20, 2023 (Holding that debtor cannot claim an exemption where he never claimed it on any of his schedules. Bankruptcy exemptions are not automatic and exist only as a result of the affirmative declaration of the debtor. The statutory text places the burden of claiming an exemption squarely on the debtor—and prescribes a specific point in time when the debtor must do so (*i.e.,* at the time of filing Schedule C). Without such notice, a debtor could sandbag creditors and the trustee with exemptions and file endless motions for reconsideration suggesting yet new exemptions, thus delaying prompt resolution of his creditors' claims and wasting estate money on litigation).

7

of the Complaint is for a denial of discharge pursuant to Bankruptcy Code section 727(a)(4)(A) and is sufficient on its own to deny the Defendant a discharge. The response to Count 4 set forth in the Late Answer is either (i) no response required, (ii) admitted, or (iii) denied as a conclusion of law. Neither the Late Answer nor the Motion to Vacate set forth a single fact that would provide any defense to Count 4, let alone sufficient facts that would constitute a complete defense to Count 4.

26. Moreover, the affirmative defenses appear devoid of specific facts that would offer a complete defense to the allegations set forth in the Complaint. To the contrary, the affirmative defenses seem to provide conclusory legal conclusions that the applicable legal standards have not been met, which is insufficient to support the relief requested in the Motion to Vacate. *See e.g., United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 196 (3d Cir. 1984) ("If we allow the setting aside of a default judgment on the mere recitation of the relevant statutory language or a phrase in the Federal Rules of Civil Procedure, then we will be establishing a new right to automatically set aside any default judgment if counsel is diligent enough to quote the applicable statute or rule of civil procedure.")

27. The Motion to Vacate fails to satisfy the threshold standard of establishing a complete defense by assertion of specific facts and therefore fails on that basis. No further inquiry is needed. The Motion to Vacate must be denied.

### Defendant is Responsible for Late Filing

28. Moreover, the Motion to Vacate fails for additional reasons. Defendant argues that the failure to respond was not a product of culpable conduct by Defendant and that he was aware of the action and discussed with Counsel. *See*, Motion to

8

Vacate, ¶ 20. The Motion to Vacate does not provide any reason for the delay. The apparent implication is that the delay was by Counsel, but such unexplained inaction remains a delay by Defendant. *See, Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962) ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent[.]").

### **Default is Facially Valid**

29. Obtaining a default judgment involves a two-step process. *Cohen v. Kallok (In re JRA 222, Inc.)*, 365 B.R. 508, 513 (Bankr. E.D. Pa. 2007). First, default must be entered against the non-appearing party. *Id.* Second, after the entry of default, the movant must request the entry of a default judgment. *Id.* The two procedural steps are analytically independent, and each step has distinct consequences. *Id.* The general effect of an entry of default is to deem the allegations contained in a complaint as admitted. *Id.* Accordingly, a defaulting party may not attack the factual allegations in a complaint. *Id.* After default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action upon which default judgment can be entered. *Id.*

30. The Motion to Vacate asserts that the Default is facially invalid. As noted in the Motion to Vacate, Fed. R. Bankr. P. 7055 provides that "When a party

9

against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Answer Deadline was October 4, 2024, which expired without the Defendant answering or otherwise responding to the Complaint. The Default was entered on October 8, 2024, at which time the Defendant had not filed the Late Answer. The Default therefore is facially valid.

31. The Defendant did not reply to the Motion for Default Judgment and did not appear at the Hearing thereon. With the valid Default in place and the Motion for Default Judgment uncontested, the consideration of whether the admitted facts set forth in the Complaint set forth valid causes of action was unopposed. Accordingly, the Default Judgment was entered. The Default is valid, and the Default Judgment was thereafter entered on an unopposed basis.

[*remainder of page intentionally left blank*]

## CONCLUSION

**WHEREFORE**, the U.S. Trustee requests that this Court sustain this Objection and grant such other relief as it deems just and proper.

Dated: November 25, 2024

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**For Regions 3 and 9**

By: /s/ *John Schanne*
John Schanne
Trial Attorney
United States Department of Justice
Office of The United States Trustee
Robert NC Nix, Sr. Federal Building
900 Market Street, Suite 320
Philadelphia, PA 19107
Phone: (202) 934.4154
John.Schanne@usdoj.gov